IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY McFERREN,               :No.05-66E
              Petitioner        :District Judge McLaughlin

        v.                      :Magistrate Judge Baxter
SUPERINTENDENT TENNIS, et al., :

        Respondents     :
        PETITIONER'S OBJECTION TO REPORT AND RECOMMENDATION

FILED

'07  JAN -5  A11:31

CLERK
U.S. DISTRICT COURT

    AND NOW, comes, Anthony McFerren, (Petitioner), who files the instant
Objection to the Report and Recommendation, in support thereof, represents
the following:

1. The Report as the last reasoned judgement unequivocally fail's to apply
the correct standard of Strickland v. Washington, as clarified in Rompilla
v. Beard, 545 U.S. 374, 125 S.Ct. 2456 (2005). The Report at p., 17
issue(a) holds there was no evidence in the record to support and charge of
self-defense, and relies upon a state Superior Court case.  First, each
court has failed to note as supported by the record petitioner had a
private counsel, whom at the conclusion of the trial left for PIttsburgh,
leaving petitioner with a public defender whom was not informed on the
case, strategy, or the evidence, and private counsel was disbarred from
practice because of illegal conduct prior to this case and during.  In this
light, Ineffective assistance of counsel under the Strickland standard is
deficient performance, with performance being measured against an objective
standard of reasonableness under prevailing professional norms. Rompilla,
supra.  The Report does address precedent available during the trial in
1979, which does support petitioner was entitled to the charge.  With a
degree of specificity, constitutionally speaking, for a defendant to prove

self-defense as the crux of the issue here, is in reality burden

shifting. Sandstrom, 442 U.S. at 520. Moreover, Sandstrom was based on an

extension from IN RE **Windship**, 397 U.S. 358, 90 S.Ct. 1068 (1970).

Fundamental fairness was denied in the instant case at bar.  Here, the

issue is whether trial counsel was ineffective for failure to argue

self-defense and request a charge on self-defense.  The petitioner bears

the burden to rebut the presumption of correctness by clear and convincing

evidence. 28 U.S.C.§2254(e).     First, the constitution guarantees a

defendant to effective assistance of counsel and the right to a defense.

Petitioner went to trial with defenses that were half-hearted, not

investigated, which a reasonable attorney would not have chosen the same

course.  However, the Report adopted Commonwealth v. La, supra, from the

state court judgement.  Clearly, this error, as in 1979 case authority and

the statute supported the sight evidence presented here, was entitled not

only to an argument, but an instruction on self-defense. See **Commonwealth**

**v. Heatherington**, 471 Pa. 562, 385 A.2d 338 (Pa. 1978). Where the Supreme

Court held that failure to instruct on relationship between 'malice' and

self-defense in view of the dispute going to reasonableness of defendant

asserted belief his life was in danger, was not harmless error).Id. Because

voluntary manslaughter as an element of malice, and malice is an element of

murder, a jury should be instructed upon the difference. **Rose**, supra.

The  evidence presented at trial, (the PCRA hearing demonstrates the

prosecution withheld a picture from the defense on petitioner's cut hand,

see discussion in Report at p.,25, which the picture shows Petitioner was

struck by the victim and appears as a glass cut from a bottle) demonstrates

for example in Respondents Brief at p.,6 through 12 is the Commonwealth's

interpretation of the statement, which indicates petitioner went to visit

the victim to recover money owed, and they were in the back room of the store, the victim pushed the petitioner arguing, and petitioner in response grabbed a knife from the sink area and cut the victim slightly, the victim volunteered to pay petitioner with the stores money, and then the victim hit petitioner with a bottle cutting petitioner's hand, and after the victim attempted to retrieve another bottle to inflict injury on the petitioner, is when the victim was stabbed, the statement shows a continuance argument between the victim and the petitioner. Note worthy, is customers came into the store and the victim never complained or left the area. This statement has been asserted as involuntary and a product of the interviewers version of events. Id.

Clearly, the state in itself shows petitioner was placed in fear of bodily injury, the victim was the aggressor, which is supported by the record. See Exhibit 63 in the Answer at p., 46-47 and 48). Clearly, since this was in evidence counsel can show no reasonable decision not to argue same. The duty to retreat, under the totality of circumstances since the victim again tried to attack petitioner with yet another bottle, the duty to retreat was lost and impossible, as recognized under law, and this duty is not absolute.

The Report and Recommendation simply adopts the Commonwealth's misinterpretation of the evidence and the record. Finally, in all homicide cases a criminal defendant is entitled to have the trier of fact consider the lesser exposures to homicide, specifically, in as a case as here, in which there existed no premeditation, nor a robbery as supported by the evidence. Because the evidence shows beyond a reasonable doubt that no robbery actually occurred, the lesser homicide exposures were fundamentally available under the due process clause. Commonwealth v. Austin, 906 A.2d

1213 (Pa. Super. 2006). Thus, the Report failed to address our U.S. Supreme Court ruling on dispensing powers, and the Constitutional requirement that all homicide cases are entitled to a lesser exposure instruction.

Finally, in light of the facts in evidence, it can be reasonably demonstrated trial counsel and substitute counsel provided ineffective assistance, insofar, as a reasonable attorney would have placed some defense before a jury, here, there existed no defense period for the jury to consider. Clearly, the states court decision is contrary to and unreasonable, which this issue is debatable among jurist of reason. This is a case in which the record was not reviewed for what it is, but rather, reviewed as Commonwealth v. La, as relied upon by the state court is contrary to and unreasonable. Specifically, the Constitutional analysis in **Commonwealth v. Manning**, 477 Pa. 495, 384 A.2d 1197 (Pa. 1979), holds a defendant has a clear right to a complete instruction on voluntary manslaughter under 18 PA.C.S.§2503(b) unreasonable belief. See also Commonwealth v. Galloway, 485 A.2d 776 (Pa. Super. 1984). The evidence shows the victim again tried to attack petitioner with a second bottle, which the evidence shows there was no sufficient 'cool time' to retreat. Commonwealth v. Whitfield, 475 Pa. _, 380 A.2d 362 (Pa. 1977). The Report failed to review the record, and applicable law, because since the statement asserts the victim voluntary paid petitioner with the stores money, the offense of robbery was suspect at best, the specific intent to kill element was thus suspect, as the statement even by the Police account if accepted as true, demonstrates the victim was the aggressor, the victim continued the difficulty, and there was no time to retreat, which negates the matter to a lesser degree. Which these facts in record are in the guise of Keeble v. U.S., 93 S.Ct. 1993 (1973), and Hooper v. Evans, 456 U.S. 605,

102 S.Ct. 2049 (1982). Clearly, if a Court actually reviews the record it would find that petitioner has satisfied the contrary to and unreasonable application clause. This Petitioner has not had a fair bite at the apple.

In sum, petitioner has demonstrated ineffective assistance of counsel and prejudice. Strickland v. Washington, supra.

The Report states the PCRA Court noted that trial counsel failed to lay the ground work for a self-defense claim, which does not entitle the instruction. Clearly, this was the basis of the claim and the dispute therefore, has not been settled. To the contrary, while the trial court's recitation of the record is correct in some points, it is not correct in other points and is devoid of mentioning matters that assist the petitioner. See Report at p, 18. In light of the fact, had counsel investigated this defense and presented same in the most favorable light, there exist a reasonable probability the outcome of the trial would have resulted differently. Id.

2. Petitioner objects to the Report at p., 18. Clearly, the state court failed to provide a full and fair hearing, in which the suppression claim was not fully developed. Under Stone v. Powell, supra, the Petitioner is entitled to a evidentiary hearing in this matter to develop his constitutional claim. The Constitution is clear, that Petitioner under the Sixth Amendment must be present at every critical stage of adjudication. The Report adopted the last reasoned judgement, that the claim has merit, but no prejudiced is established. To the contrary, prejudice has been established, as there exist little strategic choice not place the petitioner on the stand to avoid further cross examination. Clearly, a reasonable attorney knows credibility determinations are made during suppression hearings, which Petitioner would have testified that the

statement was a product of the interviewers thoughts and facts, that he
requested counsel during the interrogation and was refused, which under the
federal authority prejudiced is shown, as this appears to be a constructive
denial of counsel, in which prejudice need not be shown. This issue is
debatable among jurist of reason.

3. Petitioner objects to the Report at p., 19.  Clearly, Petitioner was
denied his Sixth Amendment right, as every criminal defendant is entitled
to a defense.  The Report cites counsel argued that the jury should not
incarcerate a 19 year old for the rest of his life.  Clearly, the last
reasoned must be rejected under 2254(d)(1). Specifically, counsel was
required under this argument to present a defense to the mercy dispensing
powers of the jury, this was ignored by the Report and the state court, 2)
intoxication, under the fundamental fairness, the Petitioner had a legal
defense of intoxication, which negates First Degree Murder to Third Degree,
or manslaughter; 3)Counsel could have negated a specific intent, as the
weapon was not brought to the store by the Petitioner, but was there in the
store and utilized only after the victim became the aggressor, and 4) there
was nor robbery and no intent to rob, because the money was voluntarily
given to petitioner, which negates First and Second Degree Homicide.  To
find the outcome would not have been different is pure conjecture, and not
supported by the record.  Petitioner has shown a denial of a constitutional
right. Strickland v. Washington, supra.

4. Petitioner objects to the Report at p., 20.  Specifically, under
Pennsylvania Law, if a criminal defense attorney cross examines a
Commonwealth's expert, the defense then is not entitled to court appointed
experts. Here, counsel was privately retained, and the Petitioner actually
suffered due to lack of additional funding. This attorney at trial appeared

to be under the influence of a controlled substance and was all over the place sort of speak with this case. Moreover, the crux of this issue is the Commonwealth's expert testified no blood was found on the walls or the upper parts of shipping creates that were lying on the back floor, where the victim was lying. This single piece of testimony actually disproves the Commonwealth's attorney blood spatter theory, and actually supported petitioner's claim of events to the best of his recollection. Trial counsel made no cross examination, which actually prejudiced the petitioner to a fair trial. In addition, counsel prejudiced the petitioner by failure to procure a defense expert, this issue was adequately developed in exhibit 63 of the answer at p., 62 thereof. Clearly, petitioner has rebutted the presumption of correctness.

5. Petitioner objects to the Report at p., 21. Clearly, counsel can be deemed ineffective for failure to procure a defense expert to explain and have the jury assess the mental effects of consuming a large amount of drugs and alcohol in a short time, which renders ones faculties impaired, which negates "specific intent", and malice. Which this evidence is not hypothetical, but rather developed from the inception of this case. The state court here has simply ignored the facts of the record. Here, trial counsel simply decided to place defense before the jury leaving the petitioner effectively without counsel. Petitioner was prejudiced by counsel's deficient performance. The Report holds some illogical explanation to deny this claim. The true crux is when drugs and alcohol are mixed, one may recall most of the events, but act out in another frame of mind, and Federal case authority citing Supreme Court precedent clearly explains this fact. Petitioner was prejudiced as a result of the deficient performance, as an expert may have changed the verdict.

6. Petitioner objects to the Report at p., 22. Clearly, Richard Denson's testimony would not have cumulative. This witness would have testified to petitioner's state of mind, which under the totality of circumstances is not cumulative. Counsel's failure to investigate this witness was deficient performance with resulted in prejudice. **Rolan v. Vaughn**, 445 F.3d 671 (3rd Cir. 2006)(reversing District Court for counsel's failure to investigate defense witness). Clearly, this issue is debatable among jurist.

7. Petitioner objects to the Report at p., 22. Counsel prejudiced the petitioner for his failure to object to the Court's discretion is allowing the statement to go out with the jury during deliberations. The jury in this case clearly did emphasis on the statement, which denied petitioner a fair trial. Clearly, the trial court's ruling allowing the statement was fundamentally unfair. Although Pennsylvania Law at the time of $tria_1$ permitted through discretion the statement going out, since the statement here was admitted as an exhibit caution must be exercised by sound legal discretion. Commonwealth v. Revanell, 448 Pa. 162, 292 A.2d 365 (Pa. 1972). The Due Process Clause of the Fourteenth Amendment and the Sixth Amendment clearly show a denial of a constitutional right. The statement was the only evidence the Commonwealth relied upon to submit its case to the jury. The statement in parts was highly prejudicial to the petitioner, raising a fixed bias and would of destroyed the objectivity of the fact finders during deliberations, which was a clear abuse of discretion. Clearly, to the contrary, had counsel objected it could be reasonably said the trial court would have exercised its legal discretion and not have sent the statement out as an exhibit. Counsel's performance was deficient and prejudiced the petitioner.

This issue was developed in exhibit 63 of the Answer at p., 70. However,

the facts in evidenced were avoided by the state court which satisfies 2254(d)(1) requirements.

8. Petitioner objects to the Report at p., 23. Counsel clearly was ineffective for failure to request a charge that the jury consider whether the statement was voluntary. Clearly, substitute counsel can thus be deemed ineffective. The problem that was not resolved in the state court is the switch of trial counsel at the close of the case. The evidence shows trial counsel did argue the statement was involuntary, as evidenced by exhibit 63 in the Answer at p., 71. However, in reviewing the evidentiary hearing evidence was developed , at the PCRA Hearing trial counsel testified he did not object to the statement, because it supported self-defense, yet no charge was requested, the PCRA Court noted, because the statement is voluntary according to the police, there is no need to give an instruction. See PCRA Court opinion at 19 of exhibit 65 in the Answer. Clearly, this is contrary to and unreasonable. A criminal defendant has a constitutional right to have a jury consider the voluntariness of the statement. **Commonwealth v. Ewell**, 456 Pa. 519, 219 A.2d 165 (1974). The problem is under Pennsylvania Law at the time of petitioner's trial, is counsel must file a written points for charge. Attorney DeCello, did not file any points for charge and this may have been, because he was in a hurry to leave for Pittsbugh. Attorney Decello had Attorney Barret from the Public Defenders office stand in and informed him of no trial matters. See Exhibit (a) attached hereto, an excerpt of a conference the Commonwealth left out its Answer. Clearly, trial counsel argued several issues, but failed to request the necessary charges for his client. There exist no reasonable tactical decision not to ask for an instruction on the voluntariness of the confession when same was

argued  in  1979. Then  to assert  at  the  evidentiary  hearing  almost  two
decades later, the statement supported  self-defense,  yet  no  instruction is
even  requested  lends  credence  to the facts  in evidence that  trial  counsel
was working during  the  trial  with  some  personal  conflicts,  as  his  clients
best  interest  were  not  effectuated.  Clearly,  had  trial  counsel  requested
the  instruction,  the  jury  may  have  given  more  weight  to petitioner's  own
testimony  then  that  which  was  a  product  of  the  interviewers,  and  the
verdict  may  have  resulted  differently. Strickland  v. Washington,  supra.

9. Petitioner objects  to  the  Report  at  p.,  23-24-25-26.   The State Court
avoided  evidence  as  the  Report  and  Recommendation  adopted,  the  fact  in
evidence  that  trial  counsel  left  his  client  and  forced  his  client  to
proceed  with  a  Public  Defender  whom  had  no  knowledge  of  the  case  or
strategy.  See  exhibit  (a)  attached  hereto.

   Petitioner  here  has  a  denial  of  counsel  of  choice. U.S. **v. Gonzales,**
(U.S. 2006),  2006  WL1725573);  there  is  a  conflict  under  **Cuyler v. Sullivan,**
100  S.Ct.  1708  (1980),  and  clearly  violates  the  Constitutional
requirements  outlined  for  attorney  selection  in  **U.S. V. Rakin,** 779  F.2d  956
(3rd Cir.  1986); and  finally,  this  matter  attaches  a  constructive  denial  of
counsel. U.S. v. **Cronic,** supra.

   The  jury  requested  clarification  on  certain  instructions  on  which  the
trial  court  originally  refused  to  instruct.   The  facts  in  evidence  have
been  fully  addressed  at  exhibit  63  in  the  Answer  at  p.,  72  Issue  9  of  the
state  court  brief.   The  Report  however,  has  erroneously  applied  the  last
reasoned  judgement  and  the  Constitutional  challenge. The  crux  is  the  trial
court  did  not  instruct  the  jury  that  facts  indicating  a  contrary  intent
could  be  considered  by  the  jury  to  prevent  the  inference  from  arising,
which  was  approved  in  Commonwealth  v.  Lee,  supra.  See  exhibit  63  at  p.,

73. The Report applies Lee as support for the Commonwealth, when in fact it supports petitioner's position. The jury was never charged on any basis from which it could refuse the inference of specific intent. **Calwell v. Mississippi, 472 U.S. 320 (1985). Counsel at trial thus argued petitioner's age and life is life, asking for mercy, which was not** considered by the state courts, important when counsel of choice was present the trial court refused to give a malice charge on use of a deadly weapon, id at p., 74 of exhibit 63. Clearly, counsel abandoning his client again prejudiced the clients interest, as Attorney Barrett was not informed of the trial, nor of any prior rulings. Hence, the state court and the Magistrate has failed to review this Constitutional violation. Had counsel of choice been present the Commonwealth could not have taken advantage of the addition charge, which was a direct verdict that contributed to the verdict. Clearly, petitioner was prejudiced as a result of Attorney's Barrets failure to object to the charge, correct same and object to the trial court reversing its prior ruling not to instruct on use of a deadly weapon. Strickland v. Washington, supra.

Finally, the **Report is in error, as the trial record evidences the trial court refused to instruct the jury on 'use of a deadly weapon, and refused to instruct on how malice and a specific intent could be negated. See R.R. at 405-406, or Exhoibit 63 at p., 74)).**

The Report in error of the actual record states the trial court "initially charged the jury, it could infer the malice necessary for a conviction for first degree murder from the use of a deadly weapon to a vital part of the body. See Reprt at p., 24)). The Reprt failed to address the court's initial ruling that this charge would not be given, which all prior counsel were required to object upon, thus, it was Constitutional error for the Court not to instruct at minimum to dispensing powers, since that was accurately placed before the jury. **Caldwell v. Mississippi**, supra.

//

Clearly, all prior counsel's deficient performance prejudiced the outcome of this case. With a degree of specificity, the only legal argument under law that was made by defense counsel was the argument that life is life and requested the jury to show mercy upon this 19 year old, which does in fact under fundamental fairness warrant a mercy dispensing charge. Here, private counsel, and the Public Defender whom filled in for private counsel did not place any type of defense before the jury. It is incumbent upon counsel to file a points for charge with the trial court to instruct the jury upon certain laws so the jury may assess and adjudicate each element of the offenses charged under the Sixth Amendment jury function, which clearly was not the case here. A reasonable attorney would not allow a client to go before a jury with no defense for a jury to assess to negate the mens rea of First and Second Degree Murder. The reasonable standard of Strickland has been established. **Rompilla**, supra.

10. Petitioner objects to the Report at p., 25. Clearly, the state courts decision as adopted by the Report and Recommendation is in error in respect to the Brady violation. During the evidentiary hearing trial counsel testified he had never seen the photograph before.

Clearly, the Report does address the fact the trial counsel was ineffective for his failure to investigate this photograph, as he was informed of its existence. Moreover, a reasonable attorney would have investigated this material evidence and filed a Motion to Compel same, as the photograph of petitioner's hand being cut by a bottle, actually is material evidence that corroborates petitioner claim that the victim struck him with a bottle, which is material to innocence or guilt.

This issue has not been fully developed in the state court, as it was raised as an ineffective counsel claim, then on appeal addressed and argued

as a Brady violation.

However, what is not clear, is petitioner told his trial counsel of the picture and inquired why it was not part of the trial. See Exhibit 63, at p., 76 (McFerrens State Court brief). In light of this trial counsel testified he never saw the photograph before. (RR at 681, 692, Evidentiary Hearing). Therefore, while this claim is legally titled Brady, it was developed why the defense never had possession of the material evidence. Accordingly, the point the record demonstrates is trial counsel failed to listen to his client, failed to investigate his clients defense, and failed to seek further Brady material, and in sum, trial counsel is either lying under oath about this evidence, or the prosecution withheld same intentionally, as the question was never settled whether trial counsel requested the photograph and was informed by the prosecution it did not exist. This issue requires a evidentiary hearing as the issue was not fully developed in the state court.

A reasonable probability exist had this evidence been before the trier of fact, it would have corroborated petitioner's assertion the victim attack petitioner with a bottle, and support his claim he acted in self-defense.

Clearly, if a evidentiary hearing is not a fundamental miscarriage of justice will again occur, as this Court should turn a blind eye to innocence. Reese v. Fulcomer, 946 F.2d 247, 254 n. 3 (3rd Cir. 1991). Clearly, not only does the last reason judgement ignore Brady's true language, the last reasoned judgement applied Brady erroneously to the Supreme Court's holding and erroneous to the facts in evidence.

Finally, on appeal the issue was raised as a sole brady claim, while in the PCRA Court is was raised under ineffective assistance of counsel. However, since the PCRA Court addressed the issue under ineffective

counsel, and failed to address same in the opinion, See exhibit 63 in the Answer (PCRA Court opinion), and the Superior Court barely touched the issue, the facts were not developed in this matter. Clearly, this is deserves further proceedings. Clearly, the Report is in error, and the District Court has the power to actually review the record and not adopt the presumption of correctness.

11. Petitioner objects to the Report at p., 26. To the contrary a reasonable jurist could have debated whether each of the Constitutional claims violates the Sixth and Fourteenth Amendments. Moreover, while the record supports several issue's were not fully developed and there should be a evidentiary hearing. Finally, petitioner has attached exhibit (a) to the instant objections. Which lends credence while vital portions of the record were not provided in the Commonwealth's Answer, exhibit (a) demonstrates a denial of a constitutional right when counsel of choice abandons his client at the close of trial and substitutes his representation with a Public Defender whom has no knowledge of the defense, the facts in evidence, nor prior rulings, a blind representation, and in fact as the record supports the jury came back with a question and the Public Defender permitted an instruction that was previously refused, and was not aware to request additional instructions, which prejudiced the outcome of the trial. Clearly, Petitioner has demonstrated a reasonable jurist would find the Magistrates Report debatable and wrong, and in addition, petitioner has showed the issues are debatable and deserve further proceedings. Miller El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029 (2003).

CONCLUSION

It is respectfully requested the Report be reversed for independent fact findings, the complete state court record be ordered, and the matter scheduled for a evidentiary hearing.

Respectfully submitted,

A. McFerren

Anthony McFerren

CERTIFICATE OF SERVICE

I, Anthony McFerren, states under the penalty of perjury, that he has given the within documents to prison officials for prepaid postage delivery this 19th day of December, 2006, for service upon the persons indicated below.


CLERK OF COURTS
U.S. DISTRICT COURT

Erie, Pa 16501


D. Ferguson, ESQ.
ASSISTANT DISTRICT ATTORNEY

CRAWFORD COUNTY COURT

MEADVILLE, PA 16335                    s/ A. McFerren

1      major arguments.

2                  THE COURT:  All right.  I'm lost.

3      Tell me again what you want me to put down or

4      what you're arguing about.

5                  MR. HATHEWAY:  All it is, this is

6      what I think perhaps the main crux of his PCRA,

7      the main issues would be numbers 12, 13 and 14.

8                  THE COURT:  Now this is in your

9      brief.  12, 13 and 14.  Now we note that.  And

10     what does that mean?  I suppose I note that

11     that's the main thrust of the hearing.  Failure

12     to file written points of instructions or they

13     require instruction for self-defense, of course.

14     All right.

15                          Failing to object to

16     trial Court's jury instructions could infer

17     premeditation from use of a deadly weapon.  And

18     failing to file an appellate brief to the

19     Superior Court, which ultimately resulted in

20     defendant's appeal being non prossed.

21                  MR. HATHEWAY:  Correct.  I think I

22     have got into issue 12.  Issue 12, Judge.  At

23     the close of the case, the Commonwealth I

24     believe had submitted a written point for

25     charge, points for charge.  And may have

1    augmented that by orally asking for the Court to

2    include as one of its points for charge, to tell

3    the jury that they could infer malice on the

4    defendant's behalf because he used a deadly

5    weapon against a vital organ of the victim's

6    body.

7                                   At that time,

8    originally when it was brought up in a review of

9    the trial transcripts indicated that the Court

10   said no, we are not going to give that

11   instruction.  And the Court didn't.  But then

12   after the jury was discharged and they were gone

13   for maybe a couple hours, they came back down

14   and they had a question.  And their question was

15   dealing with the definitions of murder one,

16   murder two and murder three.  At which time, the

17   Court then tried to explain further for the jury

18   what the definition or what was the difference

19   between murder one, murder two and murder three.

20                                   And then the Court

21   at that time, when explaining murder one, gave

22   the instruction that the jury could infer malice

23   or premeditation from the use of a knife or from

24   the use of a weapon upon a --

25                   THE COURT:  ---  vital part of an

1          organ.

2                    MR. HATHEWAY:  Right.  And the

3          Court went on to say such as a knife in this

4          case.  Now part of the problem there was besides

5          at that time, there was a practical problem that

6          had occurred because the defendant's trial

7          counsel, Mr. DeCello.  After the jury was

8          excused and went up to deliberate, he left and

9          apparently went to go to Pittsburgh.

10                                     Now he didn't

11         completely leave Mr. McFerren stranded.  But

12         what he did was apparently he got a hold of Mr.

13         Barrett, Mr. Bruce Barrett, from the Public

14         Defender's Office and asked him to stand in.

15         Now Mr. Barrett, I can only assume he didn't

16         know anything or very little about this case.

17         Now Mr. Barrett was, in fact, present when the

18         jury came back and asked that question.  But Mr.

19         Barrett didn't object to the Court giving that

20         supplemental instruction.

21                                     And then probably,

22         it's not Mr. Barrett's, necessarily his fault

23         because he wasn't here during the course of the

24         trial.  But I think for his attorney to leave

25         and go down to Pittsburgh while the jury was

1      out, knowing that they could come back with a

2      question like this, and because they did come

3      back was such a serious question like this, that

4      if he had been here, once he heard the Court

5      start to get into telling the jury that they

6      could infer premeditation or malice, --

7                  THE COURT:  Is that erroneous?  Is

8      there case law that says the jury can infer

9      malice from use of a deadly weapon.?

10                 MR. HATHEWAY:  Just a second,

11     Judge.  I think I had some case law on that.

12     I'm reading from my brief, Judge.  Quoting from

13     a Superior Court decision Commonwealth versus

14     Toledo.  Which is a 1987 decision.  In that case

15     the Superior Court stated the case authority is

16     clear that the jury is only permitted to infer

17     specific intent to take a life from use of a

18     deadly weapon on a vital organ, in quotes,

19     absent any circumstances to negate such an

20     instruction.  And then what happens is there was

21     an instruction I guess which the Superior Court

22     liked that was given in a case of Commonwealth

23     versus Lee, where apparently the trial court in

24     that case stated that the instruction was, as a

25     matter of law, you may infer legal malice from

1    intentional use without legal cause or, excuse

2    me, legal excuse or legal justification of a

3    deadly weapon on a vital part of the body of the

4    victim.  And then the trial court went on to

5    define what a vital part of the body was meaning

6    a portion of the body, meaning organ basic to

7    the continuance of life.  Then the Court went on

8    to define what a deadly weapon was.  Meaning any

9    firearm or any device designed as a weapon

10   capable of producing death or seriously body

11   injury or any device or instrumental which is

12   calculated or likely to produce death or serious

13   bodily injury.

14                   This inference of

15   malice that arises from the use by the killer of

16   a deadly weapon upon a vital part of the

17   victim's body is one which you're at liberty to

18   apply or not to apply as you see fit.  If you

19   find that there were any qualifying facts

20   indicating a contrary intent, such facts would

21   prevent application of this principle by you.

22                   So what Mr. McFerren

23   is contending is basically the last two

24   sentences that I have read where the trial court

25   apparently can caution the jury.  They can look

1          at this principle of the law, but they don't

2          necessarily always have to follow it because if

3          there are other facts that would negate their

4          intention, then they don't have to follow it.

5          But Mr. McFerren is alleging that the trial

6          court, in this case, when the instruction was

7          given, it was a shorter version.  Basically, the

8          instruction says you can't infer malice simply

9          from the use of a weapon such as a knife upon a

10         vital part of the body.  And if the jury took

11         that instruction to heart, just from that

12         instruction alone, they could infer

13         premeditation.

14                          Some of his

15         contention is not necessarily, his contention is

16         that his trial counsel should have, if he had

17         been here, he should have stood up and objected

18         to that instruction being given or if the

19         instruction were to be given, that it be, that

20         basically the last two sentences of the

21         Superior Court's approved jury instruction

22         should have been added to that.

23                 THE COURT:  So the Court's answer

24         to the jury's question was incomplete?

25                 MR. HATHEWAY:  That would be

1    correct.   Initially the Court refused at all to

2    give any sort of jury instruction on inferring

3    malice from the use of a deadly weapon.   But

4    then when they came back again with some

5    questions, then the Court gave that instruction.

6    Of course, with Mr. Barrett being here, not

7    sitting in on the trial, he may have just

8    thought to himself, well, I mean the trial court

9    already gave this instruction first time around,

10   I don't see anything wrong with it.   But if Mr.

11   DeCello would have been here, Mr. DeCello would

12   have jumped up and said, wait a minute, we had

13   gone through this before; the prosecution has

14   asked this in his points for charge and the

15   trial court denied it.

16                THE COURT:  Oh, brother.  All

17   right.

18                MR. HATHEWAY:  The reason why I

19   point out these last three issues, Judge, is

20   because I think in my mind, these issues are the

21   main crux of his petition.  Mainly, his

22   strongest issues, in my opinion.

23                And then finally the

24   last issue was he was permitted to file an

25   appeal to the Superior Court.   I'm not even sure